**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHERYL SEXTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 06-CV-4225 |
| | ) | |
| ZACHARY COTTON; CHRIS SANCHEZ; and | ) | |
| JOSEPH WILLETT, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Currently pending before the Court are three motions for summary judgment, one brought by each individual defendant. See [64, 68, 79]. In addition, Defendants Sanchez and Cotton move to strike certain responses to their statements of fact filed by Plaintiff pursuant to Local Rule 56.1 [135] and certain additional statements of fact offered by Plaintiff in her Local Rule 56.1(b)(3)(c) statement [133]. For the reasons stated below, Defendant Willett's motion [64] for summary judgment on Count II and to dismiss Count VII is granted with respect to Count II and stricken as moot as to Count VII; Defendant Sanchez's motion for summary judgment [68] is granted; and Defendant Cotton's motion for summary judgment [79] is granted in part and denied in part. In addition, the joint motion to strike certain additional facts from Plaintiff's L.R. 56.1(b)(3)(c) [133] filed by Defendants Cotton and Sanchez is denied with respect to paragraphs 3-5 and 60, and denied as moot as to the remaining paragraphs. Finally, the joint motion to strike certain responses made by Plaintiff to the joint statement of facts [135] filed by Defendants Cotton and Sanchez is denied as moot.

## I.    Background

Plaintiff Sheryl Sexton ("Plaintiff" or "Sexton") filed a seven-count complaint (see Am. Compl. [45]) against Defendants Zachary Cotton, Chris Sanchez, and Joseph Willett ("Defendants") as well as against the Village of Glenwood, which previously was dismissed from this action (see [137]), pursuing most of her claims under 42 U.S.C. § 1983. The following claims asserted in Plaintiff's amended complaint remain before the Court: (1) a Section 1983 claim against all remaining Defendants alleging that they conspired to deprive Plaintiff of her constitutional rights, including her First Amendment right to free speech (Count II); (2) a Section 1983 claim against Defendant Cotton alleging that he violated her First Amendment rights relating to her arrest which she contends was without probable cause (Count III); (3) a Section 1983 claim against Defendant Sanchez alleging that he violated her First Amendment rights relating to her arrest which she contends was without probable cause (Count IV); (4) a state-law false imprisonment claim against Defendants Sanchez and Cotton based on her assertion that they falsely arrested and imprisoned her without probable cause (Count V); (5) a state-law malicious prosecution claim against Defendants Sanchez and Cotton (Count VI); and (6) a battery claim against Defendant Willett (Count VII).

Defendant Willett seeks summary judgment on Count II (the Section 1983 conspiracy claim) and moves to dismiss Count VII, a battery claim that Plaintiff raises against him. Defendant Sanchez seeks summary judgment on all counts asserted against him: Counts II (Section 1983 conspiracy claim), Count IV (Section 1983 retaliatory arrest claim); Count V (Illinois false arrest/imprisonment claim); and Count VI (Illinois malicious prosecution claim). Defendant Cotton moves for summary judgment on all claims against him: Count II (Section

1983 conspiracy claim), Count III (Section 1983 retaliatory arrest claim); Count V (Illinois false arrest/imprisonment claim); and Count VI (Illinois malicious prosecution claim).

## II.    Facts

### A.    Motions to Strike Filed by Defendants Cotton and Sanchez

Defendants Cotton and Sanchez filed a motion to strike certain paragraphs from Plaintiff's L.R. 56.1(b)(1)(3)(c) statement of additional facts [133] and a separate motion to strike certain responses made by Plaintiff to Defendants' L.R. 56.1(a) statement [135].  A party who wishes to argue that portions of an opposing party's statement of facts contain errors or are inadmissible on evidentiary grounds may file a motion to strike those portions of the statement. *Goltz v. University of Notre Dame du Lac*, 177 F.R.D. 638, 640 (N.D. Ind. 1997).  "Pleadings that do not conform with the local rules may be stricken at the discretion of the court." *Id*. at 640 (citing *Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101, 1103 (7th Cir. 1990)); *Pfeil v. Rogers*, 757 F.2d 850, 858 (7th Cir. 1985); *Graham v. Security Sav. & Loan*, 125 F.R.D. 687, 688-89 (N.D. Ind. 1989), *aff'd*, 914 F.2d 909 (7th Cir. 1990)).  Indeed, it is the function of the Court, with or without a motion to strike, to review carefully both statements of material facts and statements of genuine issues and the headings contained therein and to eliminate from consideration any argument, conclusions, and assertions that are unsupported by the documented evidence of record offered in support of the statement.  See, *e.g.*, *Sullivan v. Henry Smid Plumbing & Heating Co., Inc.*, 2006 WL 980740, *2 n.2 (N.D. Ill. Apr. 10, 2006); *Tibbetts v. RadioShack Corp.*, 2004 WL 2203418, at *16 (N.D. Ill. Sept. 29, 2004); *Rosado v. Taylor*, 324 F. Supp. 2d 917, 920 n.1 (N.D. Ind. 2004).  The Court is capable of redacting the statement of facts and disregarding all argumentative headings, interpretation or analysis of the facts, or unfounded

assertions of fact found in the statement. The Court's scrutiny of material statements of facts applies equally to the party seeking summary judgment and the party opposing it.

For example, testimony must be based on personal knowledge. See, *e.g., Joseph P. Caulfield & Assocs., Inc. v. Litho Prods., Inc.,* 155 F.3d 883, 888 (7th Cir. 1998) (testimony "that was necessarily speculative and lacking in foundation * * * is insufficient."); Fed. R. Civ. P. 56(e). In addition, although the evidence supporting a factual contention need not be admissible itself, it must represent admissible evidence. For example, a deposition transcript usually is not admissible at trial but (obviously) may be used in support of summary judgment; however, a hearsay statement made during a deposition does not constitute adequate evidentiary support for a factual proposition. See *Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir. 1997) ("hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial, except that affidavits and depositions * * * are admissible in summary judgment proceedings to establish the truth of what is attested or deposed").

The Court need not rule on all of the particulars of Defendants' motions to strike because any statements or responses that contain legal conclusions or argument, are evasive, contain hearsay or are not based on personal knowledge, are irrelevant, or are not supported by evidence in the record will not be considered by the Court in ruling on Defendants' motions for summary judgment. Many of the parties' assertions comply with Local Rule 56.1; some do not. Any paragraph or fact that is not supported by record evidence will be disregarded. Indeed, the Court has not relied on any evidence as to which the admissibility is disputed in its disposition of Defendants' motions for summary judgment in this case.

Consistent with the discussion above and the further analysis as to certain paragraphs explained below, the Court denies the motion to strike [133] paragraphs 3-5 and 60 of Plaintiff's

statement of additional facts. As for the remaining paragraphs in dispute, the Court denies

Defendants' motion as moot as the Court declined to rely on those paragraphs, consistent with its

obligations under the federal and local rules to rely only on material statements of fact which are

both admissible and supported by the record compiled at the summary judgment stage. See Fed.

R. Civ. P. 56(e); L.R. 56.1; see also *Davis v. Elec. Ins. Trs.*, 519 F. Supp. 2d 834, 836 (N.D. Ill.

2007); *Lawrence v. Bd. of Election Com'rs of City of Chicago*, 524 F. Supp. 2d 1011, 1014 (N.D.

Ill. 2007). For similar reasons, the Court denies as moot Defendant Cotton's and Defendant

Sanchez's motion to strike certain of Plaintiff's responses [135] to Defendant's joint statement of

facts in support of their motions for summary judgment. Although the Court agrees with

Defendants that Plaintiff failed in many respects to comply with L.R. 56.1, Defendants' motion

is denied because the Court did not rely on irrelevant or inadmissible facts or statements

unsupported by the record for purposes of its summary judgment determinations. *Id.*

### B. Facts Relevant to Defendants' Summary Judgment Motions[1]

The Court takes the relevant facts from the parties' respective Local Rule 56.1 ("L.R.

56.1") statements. The Court resolves all genuine factual ambiguities in Plaintiff's favor (see

*Foley v. City of Lafayette, Ind.,* 359 F.3d 925, 928 (7th Cir. 2004)), and takes no position on

whose version of disputed factual matters is correct. See, *e.g.*, *Payne v. Pauley*, 337 F.3d 767,

770 (7th Cir. 2003) (stressing that on summary judgment, courts must look "at the evidence as a

jury might, construing the record in the light most favorable to the nonmovant and avoiding the

temptation to decide which party's version of the facts is more likely true").

---

[1]  The Court is mindful that in a previous order, it ruled that Defendant Willett was not required to answer certain statements of fact proposed by Plaintiff as those statements were not germane to the claims brought against him. See April 17, 2008 Order [119]. To the extent that any of those statements were admitted for purposes of the Court's consideration of the Defendants' summary judgment motions, those statements will be considered only as they relate to Defendants Cotton and Sanchez.

L.R. 56.1 requires that statements of facts contain allegations of material fact and that those allegations be supported by admissible record evidence. See L.R. 56.1; *Malec v. Sanford,* 191 F.R.D. 581, 583-85 (N.D. Ill. 2000). The Seventh Circuit repeatedly has confirmed that a district court has broad discretion to require strict compliance with L.R. 56.1. See, *e.g., Koszola v. Bd. of Educ. of the City of Chicago,* 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon,* 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1317 (7th Cir. 1995) (collecting cases)). As noted above, where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider that statement. See, *e.g., Malec,* 191 F.R.D. at 583. Additionally, where a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems that statement of fact to be admitted. See L.R. 56.1(a), 56.1(b)(3)(B); see also *Malec,* 191 F.R.D. at 584. The requirements for a response under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000). Finally, the Court disregards any additional statements of fact contained in a party's response brief rather than in its statement of additional facts. See, *e.g., Malec,* 191 F.R.D. at 584 (citing *Midwest Imports,* 71 F.3d at l317).

Defandants Cotton, Sanchez, and Willett all are employed as Sergeants with the Village of Glenwood Police Department ("GPD"). Willett SOF ¶¶ 1-3. From May of 2005 until February of 2006, Defendant Cotton was acting as the Deputy Chief of the GPD. Willett SOF ¶ 1. From 2003 until January of 2006, Defendant Cotton was assigned to investigations. Willett SOF ¶ 2. During the time period in which the incident that gives rise to this lawsuit took place (July-August 2005), Defendant Willett had not yet become a Sergeant. Willett SOF ¶ 3; Pl.

Resp. Willett SOF ¶ 3.   In the summer of 2005, the GPD police force consisted of a chief, a deputy chief, four sergeants, and fewer than twenty patrol officers.  Pl. SOAF ¶ 1.  Defendants Cotton and Willett were friends at work, and Defendants Cotton, Sanchez, and Willett had socialized with each other outside of work.  Pl. SOAF ¶¶ 6, 74; Willett Resp. SOAF ¶ 6.

On July 23, 2005, Plaintiff was driving with a friend, Jeff Fink.  Defs. SOF ¶ 3. Defendant Willett was patrolling traffic as part of his regular duties.  Pl. SOAF ¶ 14; Willett Resp. SOAF ¶ 14.  Defendant Willett initiated a traffic stop of Plaintiff's vehicle for driving with a cracked windshield and for failure to display a front license plate.  Willett SOF ¶ 4; Defs. SOF ¶¶ 8-9.  Defendant Willett pulled Plaintiff over in a parking lot at the T.J. Meat Packing Plant. Pl. SOAF ¶ 17.   After Plaintiff produced her license and proof of insurance, Willett ran Plaintiff's license using his high-band traffic device and learned that Plaintiff's license was suspended.[2]  Defs. SOF ¶ 12; Pl. SOAF ¶¶ 18, 21, 29.  Defendant Willett searched Plaintiff's vehicle and found marijuana and a marijuana pipe.  Willett SOF ¶ 5; Defs. SOF ¶ 22.  Defendant Willett performed a pat-down search of Plaintiff (Willett SOF ¶ 6, Defs. SOF ¶ 15), which Plaintiff contends was improper (Pl. Resp. Willett SOF ¶ 6, Pl. Resp. Defs. SOF ¶ 15).[3] Plaintiff's friend, Jeff Fink, did not observe the pat-down.  Defs. SOF ¶ 24; Pl. Resp. Defs. SOF ¶ 24; Fink Dep. at 88:9-89:16.  At the same time that Defendant Willett was conducting the traffic stop and search of Plaintiff, Officer Bennett of the GPD was conducting a traffic stop in an adjacent parking lot.  Defs. SOF ¶ 17.  After completing his traffic stop, Officer Bennett

---

[2]  Plaintiff contends that her license was in fact valid at the time of her July 23, 2005 arrest.  Pl. SOAF ¶¶ 11, 20.  Plaintiff offers no evidentiary support substantiating that assertion other than her own testimony. Whether in fact Plaintiff's license was suspended or valid, however, is not material to the outcome of the motions before the Court, because Plaintiff has not raised a claim that her July 23, 2005 arrest was without probable cause.

[3]  The Court takes no position on the propriety of the pat-down because facts surrounding it are in dispute. However, those disputed facts are not material to the claims that remain before the Court, because Plaintiff has withdrawn her battery claim against Defendant Willett.  See Section III.E, *supra*.

walked over to assist Officer Willett. Defs. SOF ¶ 18. Officer Bennett completed a second search of Plaintiff. Defs. SOF ¶ 19. A female officer employed by the village of Thornton, Michelle Arendt, was then called to the scene and completed a final search of Plaintiff. Defs. SOF ¶ 21. Plaintiff was placed into police custody and charged with possession of marijuana, driving with a defective windshield, and driving on a suspended license. Willett SOF ¶ 7; Defs. SOF ¶¶ 1, 23.

Five days later, on July 28, 2005, Plaintiff, accompanied by her daughter Sarah Sexton, visited the GPD to file a citizen complaint against Defendant Willett in connection with the July 23, 2005 search and arrest. Willett SOF ¶ 8; Defs. SOF ¶ 25; Pl. SOAF ¶ 39. On that day, Plaintiff met with Defendant Cotton who was, at that time, acting Deputy Chief. Willett SOF ¶ 9; Defs. SOF ¶ 26. Plaintiff told Defendant Cotton that she had been inappropriately touched by an officer during the course of her July 23 arrest. Defs. SOF ¶ 27. Defendant Cotton asked Plaintiff to describe the incident and she proceeded to tell him that she had been pulled over during a routine traffic stop and had been arrested for driving on a suspended driver's license. Defs. SOF ¶ 28. Plaintiff told Defendant Cotton that while she was being searched, the officer pulled her pants out, stuck his hands down her pants, groped her breast, and massaged her feet. Defs. SOF ¶ 29. After describing the alleged incident, Plaintiff filled out a citizen complaint form provided to her by Defendant Cotton. Defs. SOF ¶ 30; Pl. SOAF ¶ 41; Defs. Resp. SOAF ¶ 41; Willett Resp. SOAF ¶ 41. The interview lasted approximately fifteen to twenty minutes. Defs. Resp. SOAF ¶ 61.

After Plaintiff completed her sworn complaint, Defendant Cotton spoke with Chief Joseph Falica, at which time Chief Falica informed Defendant Cotton that the Illinois State Police Public Integrity Unit did not handle complaints of this nature. Defs. SOF ¶ 31; see also Pl.

SOAF ¶ 45.  Chief Falica assigned Defendant Cotton the task of conducting an investigation.

Defs. SOF ¶ 31.  Defendant Cotton wrote up a report memorializing his meeting with Plaintiff.

Defs. SOF ¶ 32.

Plaintiff did not see or interact with Defendant Willett on the day that she filed her complaint.  Willett SOF ¶ 10.  Approximately one week after Defendant Willett's initial stop of Plaintiff, Defendant Cotton informed Defendant Willett that Plaintiff had filed a citizen complaint against him.  Willett SOF ¶ 11.  Defendant Cotton did not discuss the specifics of the citizen complaint with Defendant Willett at that time, other than to inform him that it was a complaint for improper touching.  Willett SOF ¶ 12.

Defendant Cotton then conducted an internal investigation.  Willett SOF ¶ 13.  Defendant Cotton attempted to identify potential witnesses to the incident of which Plaintiff's complained. Defs. SOF ¶ 33.  Defendant Cotton interviewed witnesses, including Defendant Willett, in regard to Plaintiff's complaint.  Willett SOF ¶ 14.  Defendant Willett denied engaging in any improper activity, including but not limited to touching Plaintiff inappropriately.  Defs. SOF ¶ 43.  During the course of his interview with Defendant Willett, Defendant Cotton made no mention of Defendant Willett's then-pending lawsuits.  Willett SOF ¶ 15.  Defendant Willett has previously stated that it did not occur to him that Plaintiff's complaint against him could threaten his career. Willett SOF ¶ 16; Pl. Resp. Willett SOF ¶ 16.  The initial contact from Defendant Cotton about the fact that Plaintiff filed a citizen complaint and the subsequent interview in connection to the internal investigation were the only discussions between Defendant Cotton and  Defendant Willett concerning Plaintiff's complaint.  Willett SOF ¶ 17.

Defendant Cotton telephonically interviewed Rosa Hernandez, who was the individual stopped by Officer Bennett at the same time that Plaintiff was stopped by Defendant Willett. [4] Defs. SOF ¶ 34; see also Pl. SOAF ¶ 50. Defendant Cotton also interviewed Jeff Fink, Officer Arendt, and GPD Officers Bennett, Fisher, and Johnson. Defs. SOF ¶ 39. Defendant Cotton learned that Fink did not observe Defendant Willett touching Sexton (Def. SOF ¶ 41; Fink Dep. at 88:9-89:16), and Officers Bennett and Fisher informed Defendant Cotton that they had not observed any inappropriate touching nor had Sexton been searched inappropriately. Defs. SOF ¶ 43. Defendant Cotton summarized his interview with Fink in a written report. Pl. SOAF ¶ 54.

After completing his witness interviews, Defendant Cotton contacted Plaintiff and requested that she return to GPD to speak about her complaint. Willett SOF ¶ 18. Plaintiff returned to GPD on August 8, 2005, and met with Defendant Cotton in his office. Willett SOF ¶¶ 19, 20. Plaintiff's daughter Sarah accompanied Plaintiff to this second interview.[5] Defs. Resp. SOAF ¶ 60. Defendant Cotton took notes, but did not record the interview. *Id*. Defendant Cotton informed Plaintiff that inconsistencies existed between her account of what happened in the complaint and what other witnesses had told him. Willett SOF ¶ 20. Plaintiff replied that she did not want to make any additions or changes to her statement. Pl. Resp. Willett SOF ¶ 20; Sexton Dep. at 201. During the course of the interview Defendant Cotton asked Plaintiff on

---

[4] In their L.R. 56.1 statement of facts, Defendants Cotton and Sanchez, submit a number of statements regarding the interview of Ms. Hernandez. See Defs. SOF ¶¶ 35-37. However, Defendants failed to provide admissible evidentiary support for these statements, and thus the Court concludes that they are hearsay and cannot be considered. See *Bombay v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996) ("[A] party may not rely on inadmissible hearsay" for summary judgment purposes).

[5] Defendants Cotton and Sanchez move to strike Plaintiff's paragraph 60 in her statement of additional facts. See [133]. Although the Court denies Defendants motion to strike this paragraph in its entirety despite Plaintiff's failure to adhere to the Local Rules (see Section II.A, *supra*), the Court is mindful of Defendants' objections and admits portions of that statement only to the extent that Defendants have admitted them. See Defs. Resp. SOAF ¶ 60.

three separate occasions whether she wanted to change any of the statements in her report.[6]  Pl. Resp. Willett SOF ¶ 20; Sara Sexton Dep. at 81: 16-17; Pl. SOAF ¶ 61.

At the conclusion of his second meeting with Plaintiff, Defendant Cotton thought that probable cause existed to arrest Plaintiff for filing a false report, as he believed that Plaintiff had contradicted her prior statements during his interview of her that day.  Willett SOF ¶¶ 21-22; Defs. SOF ¶ 53; Pl. Resp. Willett SOF ¶ 21; Pl. Resp. Defs. SOF ¶ 53; Cotton Dep. at 116:16-23 ("[W]hen I determined that she was not telling the truth, there was probable cause to make the arrest for filing a false report").  Defendant Cotton's belief that probable cause existed was based in part on statements that he contends were made by Plaintiff that day that no difference existed between an officer placing his hands in her pockets or putting his hands down her pants, and that patting her down up to her breasts was no different than grabbing her breasts.  Willett SOF ¶ 21; Defs. SOF ¶ 53.  Defendant Cotton was responsible for making the decision to arrest Plaintiff. Pl. SOAF ¶ 69.

Defendant Cotton notified Defendant Sanchez, the investigator working at that time, and "brought him up to speed" as to Cotton's belief that Plaintiff made a false complaint based on contradictions between what Plaintiff had told him in the interview that day and what she had stated in the original complaint.  Willett SOF ¶¶ 25, 27; Defs. SOF ¶ 59.[7]  Defendant Cotton had

---

[6]   The parties dispute exactly what was said during the course of this second interview and whether Defendant Cotton locked Plaintiff in his office at the conclusion of the interview but prior to her arrest. See, *e.g.*, Defs. SOF ¶¶ 48-52, Pls. Resp. SOF ¶¶ 48-52; Pl. SOAF ¶ 64; Defs. Resp. SOAF ¶ 64; Pls. SOAF ¶¶ 66-68.  Because these statements are disputed, the Court takes no position on them.

[7]   Plaintiff denies Defendant Willett's SOF ¶ 25 and responds that Defendant Cotton could not have "brought Sanchez up to speed" because she contends that Defendant Cotton returned within a minute of leaving her and charged her with perjury.  See Pl. Resp. Willett SOF ¶ 25.  In rebuttal, Plaintiff offers the deposition testimony of her daughter, Sara Sexton, who testified that Defendant Cotton was only gone about a minute.  Sara Sexton Dep. at 81.  The Court does not find Plaintiff's and her daughter's versions of the events to be inconsistent with Defendant Cotton bringing Defendant Sanchez "up to speed" and thus there is no dispute.

not talked to Defendant Sanchez prior to determining that he had probable cause to arrest Plaintiff. Willett SOF ¶ 23. This was the first time Defendant Sanchez had heard of Plaintiff. Willett SOF ¶ 26; Defs. SOF ¶ 60.

Defendant Cotton instructed Defendant Sanchez to investigate whether Plaintiff had made a false complaint. Willett SOF ¶ 28; Defs. SOF ¶ 58. Defendant Cotton provided Defendant Sanchez with the documentation he had already gathered and informed Defendant Sanchez of his belief that probable cause existed to make an arrest. Willett SOF ¶ 30; Cotton Dep. at 141:17-19; Defs. SOF ¶ 61. Defendant Cotton informed Defendant Sanchez that he needed "take it up" where Defendant Cotton had left off because the situation had progressed from an internal affairs investigation, which was within his purview, to a criminal investigation, which was part of Defendant Sanchez's responsibilities. Willett SOF ¶ 30; Cotton Dep. at 141-20-24.

After Plaintiff was placed under arrest, Defendant Sanchez read Plaintiff her *Miranda* rights. Pl. SOAF ¶ 75. Defendant Sanchez attempted to interview Plaintiff, but she would not speak with him. Willett SOF ¶ 32; Defs. SOF ¶¶ 62, 66. Following Plaintiff's refusal to answer questions, a female officer escorted Plaintiff to the GPD lock-up. Willett SOF ¶ 33; Defs. SOF ¶¶ 64-65. Defendant Sanchez did not have conversations with anyone else from the time at which Plaintiff was placed in lock-up until the time at which Defendant Cotton gave his supplemental report to Defendant Sanchez approximately an hour or so later. Willett SOF ¶ 35. Defendant Sanchez did not speak to Defendant Cotton when he received the supplemental report from him. Willett SOF ¶ 36. While Plaintiff was in custody, Defendant Sanchez reviewed Plaintiff's complaint and the supplemental report prepared by Defendant Cotton regarding the internal investigation. Willett SOF ¶ 34; Sanchez Dep. at 35:24-36:1-2. Defendant Sanchez did

not speak with Officers Willett, Bennett, Johnson, or Fisher about his investigation of Plaintiff or about her arrest. Defs. SOF ¶ 95.

Upon completion of his review, Defendant Sanchez intended to charge Plaintiff with perjury. Pl. SOAF ¶ 76. Defendant Sanchez contacted the state's attorney's office to obtain approval for felony charges of perjury. Willett SOF ¶ 37; Pl. Resp. Willett SOF ¶ 37; Sanchez Dep. at 44:10-12; Pl. SOAF ¶ 79. Defendant Sanchez read the reports to the state's attorney and explained to him the conversations that he had had with Defendant Cotton. Defs. SOF ¶ 70. The state's attorney rejected Defendant Sanchez's request to charge Plaintiff with perjury. Defs. SOF ¶ 71; Pl. SOAF ¶ 81; Sanchez Dep. at 49:1-3. The state's attorney then advised Defendant Sanchez to charge Plaintiff with disorderly conduct, a misdemeanor, for filing a false report. Willett SOF ¶ 38; Defs. SOF ¶ 72; Sanchez Dep. at 49:13-15.

Defendant Cotton learned later that evening, by telephone call from Defendant Sanchez, that Plaintiff had been charged with disorderly conduct. Willett SOF ¶ 41; Cotton Dep. at 143:9-11. This was the last in a series of telephone calls between Defendants Sanchez and Cotton regarding Plaintiff where they discussed whether the GPD wanted to move forward with the perjury charges, which the state's attorney would allow only if the GPD agreed to allow an independent investigation by the state police. Cotton Dep. at 143:19-144:24. Defendant Cotton informed Defendant Sanchez that the chief of police did not want the GPD to undergo an additional investigation. *Id.* Defendant Sanchez charged Plaintiff with disorderly conduct in violation of 720 ILCS 5/26-1(a)(4), on the basis that Plaintiff submitted a false report of battery knowing at the time that there was no reasonable ground for believing such offense had been committed. Pl. SOAF ¶ 89.

Defendant Willett had no part in charging Plaintiff with disorderly conduct that day, and was not present at any point in time during Plaintiff's August 8, 2005 charge and arrest. Willett SOF ¶ 39. The first time that Defendant Willett learned of Plaintiff's arrest was the night of or the day after her arrest. Willett SOF ¶ 44. Either Chief Falica or Defendant Cotton called Defendant Willett to inform him that Plaintiff had been arrested and charged with making a false complaint. Willett SOF ¶¶ 45, 46; Willett Dep. at 119-120. Defendant Willett was never told that Plaintiff's arrest was made to protect the police department and him from another law suit against them. Willett SOF ¶¶ 47, 51.

Defendant Willett had not discussed Plaintiff's citizen complaint with Defendant Sanchez prior to August 8, 2005. Willett SOF ¶ 50. Prior to that date, Defendant Willett had no knowledge of the results of the investigation or that Plaintiff's complaint was going to be considered unfounded. Willett SOF ¶ 52.

Plaintiff's case on the disorderly conduct charges went to trial on December 30, 2005. Pl. SOAF ¶ 90; see also Trl. Trans. 12/30/05. On February 10, 2006, Judge Antonetti of the Circuit Cook of Cook County sustained Plaintiff's motion to dismiss the charge against her. Pl. SOAF ¶ 94, Ex. E.

Prior to July, 2005, Defendant Willett was involved in litigation stemming from his work as police officer.[8] Pl. SOAF ¶¶ 3-5. For example, Defendant Willett was a defendant in a civil

---

[8]    As discussed above, Defendants Cotton and Sanchez filed a motion to strike certain paragraphs in response to Plaintiff's statement of additional facts. See [133]. Defendants Cotton and Sanchez contend that Plaintiff's paragraphs 3-5 in her L.R. 56.1(b)(1)(3)(c) statement are irrelevant to Plaintiff's and thus should be stricken. The Court disagrees with Defendants Cotton and Sanchez that this evidence is irrelevant. Plaintiff contends in her amended complaint that Defendants conspired to violate her civil rights in part to shield Defendant Willett from further suit. The Court finds that evidence of prior lawsuits against Defendant Willett is relevant pursuant to F.R.E. 401, as it is "evidence tending to make the existence of any fact [*i.e.* the conspiracy] that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." Thus, Defendants Cotton and Sanchez's motion to strike with respect to Plaintiff's paragraphs 3-5 is denied. See also Section II.A, *supra*.

rights case filed by Shawn Charles in 2003. Pl. SOAF ¶ 3. However, that case was no longer pending in July, 2005. Willett Resp. SOAF ¶ 3, Ex. A (Minute Order of May 5, 2004 noting stipulation of the parties and dismissing the case with prejudice). Defendant Willett also was a defendant in a civil rights suit filed by Lawrence Puch in 2005. Pl. SOAF ¶ 4. Finally, Defendant Willett was a defendant in a suit brought by a plaintiff named Hoff against him the Circuit Court of Cook County. Pl. SOAF ¶ 5. At the time of Plaintiff's interview and subsequent arrest for disorderly conduct on August 8, 2005, Defendant Cotton was aware of one lawsuit against Defendant Willett—the suit brought by Shawn Charles which no longer was pending in the summer of 2005. Defs. Resp. SOAF ¶ 59.

## III. Analysis

### A. Standard of Review

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette, Ind.,* 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477

U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252.

### B.    The Conspiracy Claim

All three defendants move for summary judgment on Count II, in which Plaintiff alleges that Defendants Cotton, Sanchez, and Willett conspired to violate Plaintiff's First Amendment rights. In her amended complaint, Plaintiff alleged that "to protect Willett from the charges of improper touching by plaintiff and from additional legal problems, defendants entered into a conspiracy to silence plaintiff from expressing her First Amendment right of free speech in complaining as to her treatment by Willett." Am. Compl., Count II ¶ 31. Defendants argue that Plaintiff has failed to set forth any facts that show Defendants entered into a conspiracy to deprive Plaintiff of her constitutional rights. Willett Mem. at 8-9; Cotton Mem. at 7-9; Sanchez Mem. at 7-9. Plaintiff counters that the evidence of a conspiracy between Defendants is clear and convincing. Pl. Br. at 28. Plaintiff argues that the circumstantial evidence surrounding Plaintiff's arrest for disorderly conduct supports the inference that Defendants had an agreement prior to her August 8, 2005 arrest that resulted in the deprivation of her constitutional rights. Pl. Br. at 29-31. Plaintiff alludes in her amended complaint that she is pursuing a conspiracy claim under both Section 1983 and Section 1985. Am. Compl., Count II ¶ 33 ("The action[s] of

Willett, Cotton, and Sanchez were in violation of Title 42, U.S.C. Section 1983, and Section 1985, which prohibits officers from acting in conspiracy to deprive and individual of her Civil Rights.").

Conspiracy claims brought under Section 1985 may fall into one of three categories. Of those, Section 1985(3), which protects individual against conspiracies to deprive them of equal protection of their rights and privileges under the law (see 42 U.S.C. § 1985), conceivably may apply to a case like this one. Under Section 1985(3), a plaintiff must establish "(1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of the alleged conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege." *Majeske v. Fraternal Order of Police*, 94 F.3d 307, 311 (7th Cir. 1996). "Some racial or perhaps otherwise class-based, invidiously discriminatory animus" also must be established. *Id.* (internal quotations omitted); see also *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 1992).

Plaintiff fails to allege that any racial or otherwise class-based discriminatory animus accompanied the alleged conspiracy between Defendants. In fact, the only argument that Plaintiff makes in terms of the motivation for the alleged conspiracy is that it was a scheme "[t]o protect Willett from the charges of improper touching brought by Sexton and from additional legal problems." Am. Compl., Count II ¶ 31. Given the absence of evidence in the record or any argument by Plaintiff that the alleged conspiracy was motivated by a racial or other class-based discriminatory animus, the Court holds that as a matter of law Plaintiff has failed to establish that Defendants engaged in a conspiracy as defined by Section 1985(3).

Any claim of conspiracy by Plaintiff in this case therefore necessarily must fall under Section 1983. However, even before reaching the typical elements of a Section 1983 conspiracy

claim – such as whether there was an express or implied agreement among Defendants to deprive Plaintiff of his constitutional rights and whether Defendants committed overt acts in furtherance of any agreement — the Court considers decisions in the Seventh Circuit and this district indicating that the Court need not reach those elements in the circumstances of this case. The Seventh Circuit recently has explained that "'[t]o establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and *private individuals(s)* reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individual(s) were willful participant[s] in joint activity with the State or its agent.'" *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007) (emphasis added) (quoting *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003)); see also *Wright v. Village of Franklin Park*, 2008 WL 820560, at *28 (N.D. Ill. June 8, 2007) (granting summary judgment in favor of defendants on Section 1983 conspiracy claim based on plaintiff's failure to allege that private individuals were involved in the conspiracy); *Thayer v. Chiczewski,* 2007 WL 3447931, at *5 (N.D. Ill. Nov. 13, 2007) (dismissing § 1983 conspiracy claim for failure to allege that private individuals were involved in the conspiracy). Plaintiff has failed to offer any evidence that any of the Defendants sued in Count II – Defendants Willett, Sanchez, and Cotton – should be considered private individuals, rather than state actors at the time of the events at issue, or that other private individuals were part of the alleged conspiracy. Under the decisions cited above, that omission is fatal to any civil conspiracy claim under Section 1983.

In any event, even beyond that apparently fatal flaw, the Court concludes that Plaintiff has failed to demonstrate that Defendants "reached an understanding" to deprive Plaintiff of her constitutional rights. See *Reynolds*, 488 F.3d at 764; see also *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996) (citing *House v. Belford*, 956 F.2d 711, 720-721 (7th Cir. 1992)) ("For liability

under Section 1983 to attach to a conspiracy claim, defendants must conspire to deny plaintiff[s] their constitutional rights").  To sustain a claim at summary judgment that defendants conspired to deny a plaintiff's constitutional rights, a plaintiff must come forward with facts tending to show that defendants "directed themselves toward an unconstitutional action by virtue of a mutual understanding[,]" and support such allegations with facts suggesting a "meeting of the minds."  *Amundsen v. Chicago Park Dist.,* 218 F.3d 712, 718 (7th Cir. 2000); see also *Redwood v. Dobson*, 476 F.3d 462, 466 (7th Cir. 2007) ("The minimum ingredient of a conspiracy [] is an agreement to commit some future unlawful act in pursuit of a joint objective").  When considering whether a plaintiff can establish the existence of a conspiratorial agreement, "[t]he conspirators must act with a single plan, the general nature and scope of which is known to each would-be conspirator."  *Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 263 (7th Cir. 1999) (citing *Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir. 1979)).  "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives."  *Id.*  A conspiracy claim cannot survive summary judgment based on vague conclusory allegations that include no overt acts reasonably related to promoting the conspiracy.  *Amundsen*, 218 F.3d at 718.

Here, the record is devoid of any evidence, either direct or circumstantial, that Defendants Willett, Cotton, and Sanchez achieved a "meetings of the minds" prior to Plaintiff's August 8, 2005 arrest.  First, it is undisputed that Defendant Willett was not present at the police station on August 8, 2005 and did not learn of Plaintiff's arrest until after the fact.  Willett SOF ¶¶ 39, 44.  The record shows only that Willett was aware of the fact that Plaintiff had filed a complaint against him because Defendant Cotton informed Willett of the complaint and then

interviewed him with respect to the events that occurred on the date of the incident of which Plaintiff complained. Willett SOF ¶¶ 11, 14, 17. There is no evidence that Defendant Willett was aware that Plaintiff might be arrested; all he knew was that Defendant Cotton was investigating Plaintiff's complaint against him. And there is no evidence that Defendant Willett had any contact with Defendant Sanchez about Plaintiff at all. Second, it is undisputed that Defendant Sanchez had no knowledge of Plaintiff until Defendant Cotton called him to investigate whether Plaintiff had filed a false complaint, *after* Defendant Cotton had determined that probable cause to arrest existed. Willett SOF ¶¶ 23, 26; Defs. SOF ¶ 60. The best that Plaintiff can do is to establish that all three Defendants were "social" at work and in some instances, outside of work. See Pl. SOAF ¶¶ 6, 74; Willett Resp. SOAF ¶ 6. That simply is not enough to draw any reasonable inference that any sort of agreement had been reached prior to Plaintiff's arrest on August 8, 2005. There is no evidence of a "single plan" whose "general nature and scope" was known each Defendant. *Hernandez,* 197 F.3d at 263.

In sum, Plaintiff's conspiracy claim fails to establish either involvement of private individuals and state actors or the essential requirement that an agreement existed, and thus summary judgment for Defendants Willett, Cotton, and Sanchez is appropriate for Count II. Accordingly, Defendant Willett's motion for summary judgment [64] is granted with respect to Count II; Defendant Sanchez's motion for summary judgment [68] is granted with respect to Count II; and Defendant Cotton's motion for summary judgment [80] is granted with respect to Count II.

### C.      The Section 1983 Claims Against Defendants Cotton and Sanchez

Plaintiff brings individual Section 1983 claims against Defendants Cotton and Sanchez. Am. Compl., Counts III and IV. Both Defendants move for summary judgment on those counts.

Specifically, both Defendant Cotton and Defendant Sanchez contend that Plaintiff cannot pursue her Section 1983 claims because (1) each officer had probable cause to initiate the arrest against her, and (2) even if the Court were to find a genuine issue of material fact as to probable cause, each officer's actions are protected by qualified immunity under the "arguable probable cause" standard. Before turning to the question of probable cause for each Defendant, however, the Court clarifies the Section 1983 claims that Plaintiff asserts.

Section 1983 does not provide substantive rights but rather is "an instrument for vindicating federal rights conferred elsewhere," so the Court must first determine which, if any, of Plaintiff's constitutional rights were violated. *Spiegel v. Rabinovitz*, 121 F.3d 251, 254 (7th Cir. 1997). "The first step in analyzing claims under [Section] 1983 is to determine what constitutional rights are at issue." *Finwall v. City of Chicago*, 490 F. Supp. 2d 918, 921 (N.D. Ill. 2007) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989) ("the initial step in any [Section] 1983 analysis is to identify the specific constitutional right which was allegedly violated")).

In her amended complaint, Plaintiff alleges in Count III, titled "Civil Rights," that "Cotton violated Sexton's constitutional right to Freedom of Speech and Due Process of Law when he ordered Sanchez to arrest her, knowing he had no probable cause to order her arrest." Am. Compl., Count III ¶ 35. Similarly, Plaintiff alleges in Count IV titled "Civil Rights" that "Sanchez violated Sexton's constitutional rights to Freedom of Speech and Due Process of Law when he arrested her and signed the Complaint, knowing he had no probable cause to believe that she had committed any crime." Am. Compl., Count IV ¶ 36. Plaintiff then goes on to allege in Count V that both "Sanchez and Cotton had Sexton falsely arrested and imprisoned when, without probable cause, they detained and arrested her." Am. Compl., Count V ¶ 37.

As an initial matter, although not well-articulated in the amended complaint, it is now clear that Plaintiff seeks redress on her false imprisonment claim set forth at Count V under Illinois law, and not Section 1983. See Pl. Br. at 26. While false imprisonment claims may lie within the scope of Section 1983, Plaintiff cites to Illinois law in support of this claim—"the essential elements of a false imprisonment claim are that the plaintiff was restrained or arrested by the defendant, and that the defendant acted without having reasonable grounds to believe that an offense was committed by the plaintiff." *Meerbey v. Marshall, Field and Co.*, 139 Ill. 2d 455, 474 (1990). Defendants Sanchez and Cotton counter that, as with Section 1983 false arrest/imprisonment claims, probable cause is an absolute bar to a claim for false arrest and false imprisonment in Illinois. See Sanchez Mem. at 15; Cotton Mem. at 15. Defendants Sanchez and Cotton further assert that even if no probable cause existed to arrest Plaintiff, her state law false arrest/imprisonment claim fails under the Local Governmental Tort Immunity Act (745 ILCS 10/202), which requires a showing of willful and wanton conduct by the officer. See Sanchez Mem. at 16; Cotton Mem. at 15. Similarly, Plaintiff's claim for malicious prosecution set forth in Count VI invokes Illinois law, as the Seventh Circuit has held that no federal constitutional remedy exists for such a claim. See *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001) (the existence of a tort claim [for malicious prosecution] under state law "knocks out any constitutional theory of malicious prosecution"). Defendants Cotton and Sanchez again argue that this claim is barred by probable cause and the Illinois Tort Immunity Act. See Sanchez Mem. at 15-16; Cotton Mem. at 15. The Court will address Plaintiff's Illinois state law claims — false arrest/imprisonment and malicious prosecution — separately below.

In order to prove a Section 1983 claim against an individual, a plaintiff must show that the defendant deprived the plaintiff of rights secured by the Constitution or the laws of the

United States and that the defendant was acting under color of state law. See *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Ienco v. City of Chicago*, 286 F.3d 994, 997-98 (7th Cir. 2002). The parties do not dispute that Defendants Cotton and Sanchez were acting under color of state law. So the question for the Court is whether Section 1983 provides a vehicle for a constitutional claim of retaliatory arrest against Defendants Cotton and Sanchez as asserted by Plaintiff in Counts III and IV.

In their memoranda, Defendants Cotton and Sanchez observe that a recent Supreme Court decision relating to a retaliatory prosecution allegedly initiated in response to an individual's exercise of free speech is germane to Plaintiff's Section 1983 claims. See Sanchez Mem. at 10; Cotton Mem. at 9. In *Hartman v. Moore*, 547 U.S. 250 (2006), the Supreme Court held that a plaintiff must plead and prove the absence of probable cause in a *Bivens* or Section 1983 action alleging retaliatory prosecution. *Id.* at 266-267. The Supreme Court concluded that imposing a requirement that the plaintiff show an absence of probable cause was justified by the need to prove a chain of causation connecting the Defendant's retaliatory intent with the plaintiff's injury. *Id.* at 259. The Supreme Court distinguished a retaliatory prosecution claim from other types of retaliation claims, explaining that causation in such claims is "not merely between the retaliatory animus or one person and that person's own injurious action, but between the retaliatory animus of one person and the action of another." *Id.* at 263. The absence of probable cause requirement, therefore, "bridge[s] the gap" between the arresting officer's [or non-prosecutor's] motive and the prosecutor's subsequent actions. *Id.* As such, *Hartman* makes clear that, as in other Section 1983 contexts (*i.e.* false arrest), the existence of probable cause will bar a plaintiff's claim for retaliatory prosecution.

However, Plaintiff's underlying claim is not one for retaliatory *prosecution* for exercising her First Amendment rights when complaining of Defendant Willett's conduct, but rather one for retaliatory *arrest*. Seventh Circuit jurisprudence recognizes a Section 1983 claim for retaliatory arrest. See *Abrams v. Walker*, 307 F.3d 650, 654 (7th Cir. 2002), abrogated in part on other grounds, *Spiegla v. Hull*, 371 F.3d 928 (7th Cir. 2004). To establish a *prima facie* case of First Amendment retaliation in the context of an arrest, a plaintiff must demonstrate that (1) his or her conduct was constitutionally protected; and (2) his or her conduct was a "substantial [or] motivating factor" in the defendant's challenged actions, *i.e.* the arrest. See *Trepanier v. City of Blue Island,* 2008 WL 4442623 at *6 (citing *Abrams*, 307 F.3d at 654); see also *Morfin v. City of E. Chi.*, 349 F.3d 989, 1005 (7th Cir. 2003) (First Amendment retaliation claims generally require proof that the plaintiff took constitutionally-protected action and that defendants were aware of this). A plaintiff need not prove but-for causation; rather, the plaintiff must show that "his or her protected conduct was *a* factor, rather than *the* factor behind the defendant's actions." *Trepanier*, 2008 WL 4442623, at *6 (citing *Spiegla v. Hull*, 371 F.3d 928, 941-943 (7th Cir. 2004)); see also *Spiegla*, 371 F.3d at 942-43 (disavowing any requirement that a plaintiff alleging First Amendment retaliation has the burden of proving but-for causation and instead enunciating that the proper burden is whether Plaintiff's exercise of free speech was a motivating factor underlying the violation). If the Plaintiff's burden is met, the defendant then must show by a preponderance of the evidence that he or she would have taken the same actions even in the absence of the protected conduct. *Id.* (citing *Thomson v. Romeis,* 198 F.3d 1022, 1027 (7th Cir. 2000)).

An unresolved question at least in this circuit, however, is whether probable cause bars such a claim. Since the Supreme Court mandated the requirement for pleading and proving the

absence of probable cause in *Hartman* for retaliatory *prosecution*, several circuits have considered whether or not the absence of probable cause requirement extends to a claim of retaliatory *arrest* and have differed in their conclusions. See *Skoog v. County of Clackmas,* 469 F.3d 1221, 1232 (9th Cir. 2006) (finding that a showing of lack of probable cause not required for plaintiffs); but see *Barnes v. Wright*, 449 F.3d 709, 720 (6th Cir. 2006) (finding that a plaintiff must show a lack of probable cause in order to proceed on a claim for retaliatory arrest); *Williams v. City of Carl Junction*, 180 F.3d 871, 876 (8th Cir. 2007) (same). The Seventh Circuit has not squarely addressed this issue. Because the Seventh Circuit has yet to rule on whether the absence of probable cause is required and the other circuits are divided on that question, this Court must consider whether, as a matter of law, Plaintiff is required to demonstrate an absence of probable cause in these circumstances.

As in other circuits, district courts within the Seventh Circuit have disagreed on *Hartman's* implications for retaliatory arrest claims. See *Trepanier*, 2008 WL 4442623 at *7-8 (finding that the existence of probable cause bars a plaintiff's retaliatory arrest claim); *Baldouf v. Davidson*, 2007 WL 2156065, at *4 (S.D. Ind. July 24, 2007) (finding that a plaintiff must show an absence of probable cause for the arrest); see also *Webb v. City of Joliet*, 2006 WL 3692405, at *4 (N.D. Ill. Dec. 11, 2006) (citing with approval *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)) (finding that the existence of probable cause barred a retaliatory arrest claim); but see *Gullick v. Ott*, 517 F. Supp. 2d 1063 (W.D. Wis. 2007) (finding that probable cause did not bar a claim for retaliatory arrest, unlike retaliatory prosecution as in *Hartman*). In support of its conclusion that probable cause was not required, the *Gullick* court reasoned that the complex causation challenges described in *Hartman* were not present in a retaliatory arrest claim because the defendant officer was directly responsible for the plaintiff's injuries. *Gullick*, 517 F. Supp.

2d at 1071. The *Gullick* court concluded, however, that a finding of probable cause could, in any event, "tend[] to undermine an allegation that the arrest was fabricated, just as the absence of probable cause is strong evidence that the officer's true motive was an illegal one." *Id.* at 1072.

The Court finds *Baldauf* and *Trepanier* more persuasive than *Gullick*. *Baldauf* involved an alleged confrontation between the plaintiff and a police officer where the police officer initially released the plaintiff, only to arrest her minutes later when the officer allegedly heard the Plaintiff state her intentions to file a suit against him. Judge Tinder concluded that probable cause must be proven in both retaliatory arrest and retaliatory prosecution cases. *Baldauf*, 2007 WL 2156065, at *4. He reasoned that any distinction between retaliatory arrest and prosecution is artificial, because an arrest is the first step in a prosecution and the injury stems from the same event—the arrest and filing of charges. *Id.* at *3. In addition, Judge Tinder explained that to the extent that a retaliatory arrest claim is based upon seizure of a plaintiff's person, it is akin to a traditional Fourth Amendment claim, which is barred by a finding of probable cause. *Id.* Finally, Judge Tinder observed that without imposing a probable cause requirement, plaintiffs might be able to bring Fourth Amendment claims that otherwise would be dismissed simply by characterizing them as First Amendment retaliation claims. *Id.* at *4. Citing the *Baldauf* opinion with approval, Judge Coar held in *Trepanier* that where the retaliation claim stems from the filing of charges, the existence of probable bars the claim. *Trepanier*, 2008 WL 4442623 at *7. Finally, earlier Seventh Circuit jurisprudence at least suggests that the court of appeals likely would find probable cause a bar to a retaliatory arrest claim. See *Abrams*, 307 F.3d at 657 (noting that an absolute bar to First Amendment retaliatory claims in the context of an arrest based on a finding of probable cause "would not be incongruent" with the probable cause bar to Fourth Amendment false arrest claims).

Here, Plaintiff's complaint stems from the arrest and charges filed against her, which she claims occurred in response to her protected First Amendment activity – namely, the filing of a complaint against Defendant Willett. The Court concludes that, as in *Trepanier* and *Baldouf*, the common element of the underlying arrest that gives rise both to traditional Fourth Amendment false arrest claims and First Amendment retaliatory arrest claims counsels in favor of requiring that Plaintiff show an absence of probable cause. In addition, the concern over allowing Plaintiff to circumvent the traditional Fourth Amendment probable cause analysis (and also any qualified immunity analysis) where Plaintiff's retaliation claim stems from an allegation of false arrest and imprisonment, supports imposing such a requirement.

Under Fourth Amendment jurisprudence, "[p]robable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th 2006). This absolute bar applies even where "the defendant officers allegedly acted upon a malicious motive." *Id.* (citations omitted). Tellingly, Plaintiff recognizes the significance of *Hartman* and its progeny to her case and appears to concede that she must prove the absence of probable cause in order to prevail on her Section 1983 retaliatory arrest claims. See Pl. Br. at 14 (arguing that disputed material facts exist with respect to probable cause for Cotton and Sanchez's arrest and prosecution of Plaintiff for exercising her First Amendment rights). For all the reasons above, the Court finds that if probable cause existed for Plaintiff's arrest on August 8, 2005, her retaliatory arrest claims will be barred.

1. ***The Section 1983 Claim Against Defendant Cotton***

    a. Probable Cause

Defendant Cotton moves for summary judgment on Count III, which as explained above, is Plaintiff's First Amendment retaliatory arrest claim that is barred if Defendant Cotton had probable cause to arrest her on August 8, 2005. Consistent with the reasoning set forth above, the Court will consider the traditional probable cause analysis under the Fourth Amendment to determine whether Defendant Cotton had probable cause.

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); see also *Woods v. City of Chicago*, 234 F.3d 979, 987 (7th Cir. 2000). "Police officers have probable cause to arrest an individual when 'the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed' an offense." *Id.* (quoting *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998)). "Probable cause, however, does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime. * * * So long as the totality of the circumstances, viewed in a common sense manner, reveals a probability or substantial chance of criminal activity on the suspect's part, probable cause exists." *United States v. Sawyer*, 224 F.3d 675, 678-79 (7th Cir. 2000) (internal citations omitted); see also *Woods*, 234 F.3d at 996 (citations omitted) (probable cause "demands even less than 'probability' * * *; it requires more than bare suspicion but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false"). The Court evaluates probable cause determinations "as they would have

appeared to a reasonable person in the position of the arresting officer." *Mustafa*, 442 F.3d at 547; see also *Woods*, 234 F.3d at 987.

The Court first notes that Plaintiff places much emphasis on the fact that the officers originally considered charging Plaintiff with perjury, but ultimately charged her with disorderly conduct. See, *e.g.*, Pl. Br. at 17. In these circumstances, Plaintiff's argument posits a distinction without a difference, because probable cause requires only that the arresting officer believe that *some* criminal activity is occurring. See *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause"). Under the objective standard used to determine probable cause, "[t]he issue is whether a reasonable officer, with the same information known to [the arresting officer] at the time, would have had probable cause to arrest [Plaintiff] for *any offense*." *Williams v. Rodriguez*, 509 F.3d 392, 399 (7th Cir. 2007) (emphasis added). Thus, whether Defendant Cotton believed he had probable cause to arrest Plaintiff specifically for perjury or disorderly conduct is immaterial. For present purposes, the question is whether a reasonable officer, in the same position as Defendant Cotton, would have concluded, based on the undisputed facts, that there was probable cause to arrest Plaintiff for any offense.

The Court concludes that a genuine issue of material fact exists as to whether Defendant Cotton had probable cause to arrest Plaintiff when the facts are considered in the light most favorable to Plaintiff. See *Payne v. Pauley*, 337 F.3d 767, 769-70 (7th Cir. 2003) (reversing district court for failing to view the facts in the light most favorable to the nonmoving party in ruling on summary judgment motion). At the core of this case is the meeting that took place between Plaintiff and Defendant Cotton on August 8, 2005 just prior to her arrest. Defendant Cotton contends that, on the basis of inconsistencies in Plaintiff's statements and discrepancies

between Plaintiff's allegations and reports from other witnesses that no inappropriate touching had occurred, he had probable cause to believe that Plaintiff had submitted a false report. See Cotton Mem. at 10-11. Plaintiff argues that Defendant Cotton's assertion that discrepancies existed between her original complaint and her statements to him on August 8, 2005 was "directly rebutted [by] the testimony of Plaintiff and Sarah Sexton as to what was said in the fifteen or twenty-minute meeting." Pl. Br. at 14. Plaintiff further argues that "[s]imply put, if Plaintiff and Sarah Sexton are right, the Plaintiff did not lie, and Cotton had no right to arrest and prosecute her for perjury or disorderly conduct." *Id.* at 15.

The Court agrees with Plaintiff that a genuine dispute exists as to exactly what was said during that meeting, which formed, in substantial part, the basis for Defendant Cotton's determination that Plaintiff was lying. See Defs. SOF ¶¶ 48-52, Pls. Resp. SOF ¶¶ 48-52; Pl. SOAF ¶ 64; Defs. Resp. SOAF ¶ 64; Pls. SOAF ¶¶ 66-68. Because those facts are disputed and a reasonable person could believe either Plaintiff and Sarah Sexton, or Defendant Cotton, as to exactly what was said during that meeting, a credibility determination must be made by the trier of fact. See *Morfin v. City of East Chicago*, 349 F.3d 989, 999-1000 (7th Cir. 2005) (finding that where a credibility determination exists between officers and the arrestee as to what was said by Plaintiff giving rise to a disorderly conduct charge, probable cause cannot be determined by the court at the summary judgment stage); see also *Payne*, 337 F.3d at 773 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)) ("Where the material facts specifically averred by one party controvert the facts averred by a party moving for summary judgment the motion must be denied."). Because Defendant Cotton's probable cause determination rested in large part on Plaintiff's statements made in the August 8, 2005 meeting and the substance of the conversation at that meeting is vigorously disputed by parties with "personal knowledge of what occurred

during the encounter" (*Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 680 (7th Cir 2007)), the Court must conclude that there are genuine issues of triable fact as to whether probable cause existed that preclude summary judgment on Plaintiff's First Amendment retaliatory arrest claim against Defendant Cotton.[9]

### b. Qualified Immunity

Even if the Court cannot conclude as a matter of law that Defendant Cotton had probable cause to arrest Plaintiff, Defendant Cotton correctly states that he still may be entitled to summary judgment if he is entitled to qualified immunity. See Cotton Mem. at 11. Plaintiff responds that qualified immunity is not available because her constitutional rights were clearly established and material facts exist with respect to the probable cause determination.

"Whether a government official is entitled to qualified immunity is a legal question for resolution by the Court, not a jury." *Purcell v. Mason*, 528 F.3d 615, 621 (7th Cir. 2008) (citations omitted). "Qualified immunity 'ordinarily should be decided by the court long before trial' because '[t]he entitlement is an *immunity from suit* rather than a mere defense to liability.'"

---

[9] In support of his argument that probable cause existed to arrest Plaintiff either for perjury or disorderly conduct, Defendant Cotton relies heavily on the information that he obtained by interviewing witnesses to the initial encounter between Plaintiff and Officer Willett. As explained in greater detail below (see pp. 37-38, *infra*), a police officer certainly may rely on information from witnesses whom the officer reasonably believes are telling the truth. See, *e.g.*, *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 680 (7th Cir. 2007); *Jenkins v. Keating*, 147 F.3d 577, 585 (7th Cir. 1998). And, on this record, there appears to be no reason to dispute the statements of those witnesses, including the other officers on the scene, Plaintiff's friend, Mr. Fink, or Ms. Hernandez, who was a passenger in the vehicle stopped by Officer Bennett and was able to view the encounter between Plaintiff and Willett from a distance of 20 to 30 feet away. But even accepting Officer's Cotton's right to rely on that information, the Court is not persuaded that summary judgment for Officer Cotton is appropriate in this instance. While Officer Cotton's conclusion that there was no corroboration of Plaintiff's version of her encounter with Officer Willett may well have supported a decision by Officer Cotton to dismiss Plaintiff's citizen complaint against Officer Willett, the absence of corroboration alone did not give Officer Cotton, as a matter of law, probable cause to arrest Plaintiff for filing a false complaint. It is clear from Officer Cotton's own statements that, in concluding not only that Plaintiff lacked corroboration for her story, but that she affirmatively had made a false statement, Officer Cotton also relied on his judgment that Plaintiff's statements at the police station on August 8, 2005 contradicted her prior statements – a conclusion that Plaintiff vigorously disputes and that cannot be resolved by the Court at the summary judgment stage.

*Id.* (internal citations omitted).  The doctrine is designed to protect public officials from not only liability, but also from the burden of standing trial.  *Id.*

Qualified immunity shields from liability public officials who perform discretionary duties unless their conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known (see *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)), and thus "protects police officers 'who act in ways they reasonably believe to be lawful.'" *Wheeler v. Lawson*, --- F.3d ---, 2008 WL 3866950, at *7 (7th Cir. Aug. 21, 2008) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987)).  Qualified immunity is broad in scope and provides protection to "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  The protection extends to officers who make a reasonable error in determining whether there is probable cause to arrest an individual. *Anderson*, 475 U.S. at 643. Thus, qualified immunity leaves "'ample room for mistaken judgments' by police officers." *Payne*, 337 F.3d at 776 (quoting *Malley*, 475 U.S. at 343). Qualified immunity is an affirmative defense.  See *Sparing v. Village of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001).  However, once the defense is raised the burden falls to the plaintiff to defeat it.  *Mannoia v. Farrow*, 476 F.3d 453, 457 (7th Cir. 2007).

"The Supreme Court has articulated a two-part test for qualified immunity:  (1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation."  *Wheeler*, 2008 WL 3866950, at *7 (citing *Saucier v. Katz*, 553 U.S. 194, 201 (2001)).  As the Supreme Court has pointed out, "to deny summary judgment any time a material issue of fact remains * * * could undermine the goal of qualified immunity."  *Saucier*, 553 U.S. at 202.  Thus, "[i]f no constitutional right would have been violated were the

allegations established, there is no necessity for further inquiries concerning qualified immunity" and immunity is proper. *Id*. at 201. If, however, the facts alleged make out a constitutional violation, then a court must determine "whether the right was clearly established." *Id.* at 201. This inquiry is a context-specific one: "[t]he relevant, dispositive inquiry is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1991)).

Here, it is important to note that when conducting "the analysis of the reasonableness of an officer's conduct — for instance, in the Fourth Amendment [arrest] context — the reasonableness standard for the constitutional violation is distinct from the qualified immunity standard." *Leaf v. Shelnutt*, 400 F.3d 1070, 1080 n.8 (7th Cir. 2005) (citing *Anderson v. Creighton*, 483 U.S. 635, 6430-644 (1987)). For example, "even if a court were to hold that [an] officer violated the Fourth Amendment by conducting an unreasonable, warrantless [arrest], *Anderson* still operates to grant officers immunity for reasonable mistakes as to the legality of their actions." *Id.* (quoting *Saucier*, 533 U.S. at 206). Put another way, "[a] plaintiff may defeat a qualified immunity defense by 'point[ing] to a clearly analogous case establishing a right to be free from the specific conduct at issue' or by showing that 'the conduct [at issue] is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Wheeler*, 2008 WL 3866950 at *8 (citing *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001)).

The Court first addresses whether the facts, taken in the light most favorable to Plaintiff, allege a constitutional violation. See *Saucier*, 533 U.S. at 201. Defendant Cotton argues that Plaintiff has not alleged a constitutional violation, which Defendant Cotton defines as "whether Sexton was entitled to be free from an arrest * * * simply because she filed a citizen's complaint

prior to her arrest." Cotton Mem. at 12. The Court disagrees. If the Court considers Plaintiff's version of events — which the Court must do given that disputed facts still remain with respect to the substance of Defendant Cotton's interview of Plaintiff on August 8, 2005 — she did not contradict herself in that meeting, nor did she say anything contrary to the allegations made in her prior complaint. That version of events, if adopted, could lead a reasonable jury to find that Plaintiff's arrest was objectively unreasonable and was made in retaliation for Plaintiff's exercise of her First Amendment rights in filing a complaint against Defendant Willett. See *Abrams v. Walker,* 307 F.3d 60, 65 (7th Cir. 2002). Given the facts still in dispute, Plaintiff has sufficiently alleged a constitutional violation to defeat the first prong of the qualified immunity test at this time.

The Court also finds that it cannot extend qualified immunity to Defendant Cotton under the second prong of the *Saucier* test. Under that prong, the Court must consider "whether the right was clearly established" (*Saucier*, 533 U.S. at 201), or in other words, "whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." *Id.* at 202 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1991)). With respect to reasonableness, Defendant Cotton rests the bulk of his qualified immunity argument on his belief that he had probable cause to arrest Plaintiff, whether mistaken or not. Defendant Cotton further argues that "Cotton was presented with evidence indicating that the plaintiff had contradicted a previously submitted sworn statement." Cotton Mem. at 12. But the Court already has found that a genuine issue of material fact exists with regard to whether Plaintiff contradicted her previous statements.

Defendant Cotton argues in the alternative that even if the Court does not find that probable cause existed as a matter of law, a reasonable officer could have mistakenly believed that there was probable cause. Cotton Mem. at 13. Referred to as "arguable" probable cause,

that basis for qualified immunity exists when "a reasonable police officer in the same circumstances and with the same knowledge * * * as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law." *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998) (citations and quotations omitted). A court should award summary judgment to officers "if their actions were not objectively unreasonable at the time they were taken." *Id.* (citations and quotations omitted).

While the standard for "arguable" probable cause allows for more discretion on the part of an arresting officer, the Court's analysis may not rest on Defendant's version of the facts, but instead must view the facts in the light most favorable to Plaintiff. See *Payne*, 337 F.3d at 769. In view of that standard, genuine issues of material fact still remain with respect to the interview of Plaintiff on August 8, 2005. See, *e.g.*, *Arnott v. Mataya*, 995 F.2d 121, 124 (8th Cir. 1993) ("If the arrestee challenges the officer's description of the fact and presents a factual account where a reasonable officer would *not* be justified in making an arrest, then a material dispute of fact exists" and qualified immunity cannot be decided at the summary judgment stage). And although Defendant Cotton argues to the contrary, the constitutional violation at issue, a First Amendment retaliatory arrest, was clearly established at the time of the incident in question. See, *e.g.*, *Abrams v. Walker*, 307 F.3d 650, 654 (7th Cir. 2002) ("It is well established that '[a]n act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution'"). Thus, if Plaintiff's version of events is adopted by the trier of fact, the rights violated are such that a reasonable officer should be aware of them and should have understood that subjecting a person to arrest for submitting a false citizen complaint where no false statements were made violates the law. The fact that neither the Supreme Court nor the Seventh Circuit have enunciated whether a plaintiff must plead and prove an absence of probable cause

for such a violation does not bear on whether the right to be free from retaliatory arrest for exercising the right to file a complaint against an officer was clearly established. For all of the foregoing reasons, the Court denies Defendant Cotton's motion for summary judgment on the issue of qualified immunity.

### 2. *The Section 1983 Claim Against Defendant Sanchez*

#### a. Probable Cause

Like Defendant Cotton, Defendant Sanchez moves for summary judgment on the Section 1983 retaliatory arrest claim brought against him in Count IV. Plaintiff contends that Defendant Sanchez lacked probable cause to arrest her, "even assuming Sanchez acted on the basis of his trust in Cotton, his chief," because he should have known that Plaintiff's conduct did not amount to the crime of perjury. Pl. Br. at 20. As the Court noted with the respect to the retaliatory arrest claim against Defendant Cotton, the existence of probable cause to arrest for any crime, if found as to Defendant Sanchez, will bar Plaintiff's First Amendment retaliatory arrest claim against him.

As an initial matter with respect to Defendant Sanchez, the Court finds that the undisputed facts indicate that Defendant Cotton, and not Defendant Sanchez, was responsible for the probable cause determination *and* the arrest of Plaintiff. On the undisputed facts presented before the Court for summary judgment purposes, the Court concludes that Defendant Sanchez acted pursuant to orders from Defendant Cotton, his superior officer, to follow-up on making a charging determination, and he administered Plaintiff her *Miranda* rights *after* she had been informed by Defendant Cotton that she was under arrest. See Willett SOF ¶ 28; Defs. SOF ¶ 58; Pl. SOAF ¶ 75. Plaintiff herself states that Defendant Cotton, not Defendant Sanchez, was

responsible for making the decision to arrest her (Pl. SOAF ¶ 69), and contrasts Defendant Cotton as the "prime mover" with Defendant Sanchez as only a "henchman." Pl. Br. at 22.

On the basis of those acknowledgments by Plaintiff that Defendant Cotton, not Defendant Sanchez, was responsible for making the decision to arrest Plaintiff, one might question whether any claim survives against Defendant Sanchez at all under Section 1983. However, to the extent the Defendant Sanchez was in fact present during and involved in the arrest of Plaintiff,[10] the probable cause analysis differs from that of Defendant Cotton and further supports this Court's conclusion that Count IV against Defendant Sanchez cannot survive summary judgment. While the Court found that genuine issues of material fact exist with respect to the conversation between Defendant Cotton and Plaintiff on August 8, 2005, just prior to her arrest, that preclude a finding of probable cause on the part of Defendant Cotton, it is undisputed that Defendant Sanchez took no part in that conversation. Instead, Defendant Sanchez became involved only after Defendant Cotton came to an independent conclusion that probable cause existed to arrest Plaintiff and then told Defendant Cotton that he believed Plaintiff submitted a false report. See Willett SOF ¶ 23; Willett SOF ¶ 28.

To reiterate, "[a] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); see also *Woods v. City of Chicago*, 234 F.3d 979, 987 (7th Cir. 2000). "Police officers have probable cause to arrest an individual when 'the facts and circumstances within their knowledge and of which they have reasonably

---

[10]  The Court notes that Plaintiff claims that Defendant Sanchez was present when Defendant Cotton told her she was under arrest for perjury. Pl. SOAF ¶ 66. However, this fact is disputed, and thus the Court cannot rely on it. As noted above, the facts as presented on summary judgment point towards Defendant Cotton as the arresting officer in any event, not Defendant Sanchez, and Plaintiff concedes the same. See Pl. SOAF ¶ 69.

trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed' an offense." *Id.* (quoting *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998)). Notably, at the time that Plaintiff was arrested, Defendant Sanchez was entitled to rely on Defendant Cotton's representations that Plaintiff had submitted a false report in believing that Plaintiff had committed an offense. "In making a decision to arrest someone for criminal conduct that he did not witness, a police officer may rely on information provided to him by the victim or by an eyewitness to the crime that the officer reasonably believes is telling the truth." *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 680 (7th Cir. 2007) (citing *Pasiewicz v. Lake County Forest Preserve Dist.*, 270 F.3d 520, 524 (7th Cir. 2001), *Gramenos v. Jewel Cos.*, 797 F.2d 432, 439 (7th Cir. 1986)). "So long as a reasonably credible witness or victim informs the police that someone has committed, or is committing, a crime, the officers have probable cause to place the alleged culprit under arrest * * *." *Jenkins v. Keating*, 147 F.3d 577, 585 (7th Cir. 1998). And, as the Seventh Circuit recently stated, "[f]ellow law enforcement personnel are among the witnesses whose accounts the arresting officer may rely upon." *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 680 (7th Cir. 2007). Considering the information that Defendant Sanchez had received when he first became aware of the situation with Plaintiff—information provided by Defendant Cotton, Defendant Sanchez's supervisor, that Plaintiff had filed a false report—Defendant Sanchez had probable cause to complete the processing of Plaintiff's arrest and charging. Because probable cause bars a First Amendment retaliatory arrest claim, at least on the facts of this case, Defendant Sanchez is entitled to summary judgment on Plaintiff's retaliatory arrest claim against him as set forth at Count IV.

b. <u>Qualified Immunity</u>

Because the Court has already found summary judgment is appropriate on the merits for both Section 1983 claims brought against Defendant Sanchez—the Section 1983 conspiracy claim at Count II and First Amendment retaliatory arrest claim at Count IV—the Court need not consider whether Defendant Sanchez is entitled to qualified immunity.

**D.      Plaintiff's State-Law Claims: False Arrest/Imprisonment and Malicious Prosecution**

In addition to the Section 1983 retaliation claims, Plaintiff brings two state law claims against both Defendants Cotton and Sanchez — false arrest/false imprisonment (Count V) and malicious prosecution (Count VI).  Defendants Cotton and Sanchez raise similar defenses to both of these claims for summary judgment purposes, arguing that (1) probable cause is an absolute bar to both false imprisonment claims and malicious prosecution claims; and (2) the record is devoid of any evidence of willful and wanton conduct on the part of either Defendant, a requirement for such claims if immunity attaches under Illinois's Local Governmental Tort Immunity Act (745 ILCS 10/2-202), as Defendants contend it does.  Cotton Mem. at 15; Sanchez Mem. at 16.  As Defendants aptly point out, Plaintiff failed to respond to Defendants' immunity assertion.  Cotton Reply at 12; Sanchez Reply at 18.  Given the similarity in argument made by Defendants Cotton and Sanchez on these two claims, the Court will address their contentions together.

The Court begins with a brief statement of the law in Illinois for both claims.  To establish a false imprisonment claim, a plaintiff must show "that [he or she] was restrained or arrested by the defendant, and that the defendant acted without having reasonable grounds to believe that an offense was committed by the plaintiff."  *Meerbey v. Marshall, Field and Co.*, 139 Ill. 2d 455, 474 (1990).  "Essentially, a plaintiff has to show that she was unreasonably

restrained without probable cause." *Ross v. Mauro Chevrolet*, 369 Ill. App. 3d 794, 798 (1st Dist. 2006) (citation omitted). And, to succeed on a claim for malicious prosecution under Illinois law, a plaintiff must prove "(1) the commencement or continuation of an original criminal or civil proceeding by defendants, (2) termination of the proceeding in favor of plaintiff, (3) the absence of probable cause for the proceeding, (4) the presence of malice on defendant['s] part, and (5) damages resulting to plaintiff." *Boyd v. City of Chicago*, 378 Ill. App. 3d 57, 71 (1st Dist. 2007) (citing *Reynolds v. Menard, Inc.*, 365 Ill. App. 3d 812, 818-19 (1st Dist. 2006)). "Illinois does not favor suits for malicious prosecution due to the public policy interest in the exposure of crime." *Id.* (citations omitted). Malice is defined as "the intent, without justification or excuse, to commit a wrongful act." *Johnson v. Target Stores*, *Inc.*, 341 Ill. App. 3d 56, 76 (1st Dist. 2003) (internal citations omitted). Significantly for present purposes, probable cause is an absolute bar to both types of claims under Illinois law. *Jones v. Webbs*, 45 F.3d 178, 183 (7th Cir. 1995); see also *Lappin v. Costello*, 232 Ill. App. 3d 1033, 1041 (4th Dist. 1992) ("If probable cause existed for the arrest, an action for false arrest cannot lie"); *Martel Enterprises v. City of Chicago*, 223 Ill. App. 3d 1028, 1034 (1st Dist. 1991) (probable cause is an absolute bar to a claim of false imprisonment); *Ross,* 369 Ill. App. 3d at 802 (citing *Johnson*, 341 Ill. App. 3d at 73) (probable cause is fatal to a malicious prosecution claim).

As to Defendant Sanchez, because the Court has already held probable cause existed for his actions with respect to Plaintiff, and because probable cause is a bar both to false arrest/imprisonment and malicious prosecution claims in Illinois, summary judgment in favor of Defendant Sanchez on that ground alone is appropriate for both state law counts brought against him. However, that is not the case for Defendant Cotton, given the Court's conclusion that genuine issues of material fact remain as to his probable cause determination. Thus, the Court

must consider the arguments by Defendant Cotton under the Local Government Tort Immunity Act.

As an initial matter, Defendant Cotton contends that Plaintiff should be deemed to have waived any response to Defendants' argument for dismissal under the Local Government Immunity Act. Cotton Reply at 11. The Court rejects that argument. Although Plaintiff did not specifically respond to the immunity argument, the only basis on which Defendants sought summary judgment under the Act was their contention that Defendants did not act in a willful and wanton manner. In arguing that her punitive damages claim cannot be resolved on summary judgment because of disputed issues of fact, Plaintiff raises essentially the same responses that apply to the Court's willful and wanton inquiry under the Act, and the Court finds those responses sufficient to present a question for resolution by the trier of fact both under the Act and as to Plaintiff's claim for punitive damages against Defendant Cotton. See pp. 44-46, *infra*.

In Illinois, under the Local Government Tort Immunity Act, a public employee is immune from liability while enforcing the law unless his or her acts are willful and wanton. *Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001) (citing 745 ILCS 10/2-202). The government entity or public official asserting the immunity bears the burden of proof. *Van Mater v. Darien Park District*, 207 Ill. 2d 359, 368 (2003). Conduct is willful and wanton when it "shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." *Smith*, 242 F.3d at 744 (citing 745 ILCS 10/1-210). While determining a whether one's actions are willful and wanton is a question of fact, summary judgment may be appropriate where a plaintiff's factual claims are insufficient to support the claim. *Smith*, 242 F.3d at 744.

Although immunity under the Act does not extend to all activities of police officers while on duty, it covers acts or omissions while in the actual execution or enforcement of a law. *Hudson v. City of Chicago*, 378 Ill. App. 3d 373, 388 (1st Dist. 2007); see also *Lacey v. Village of Palatine*, 379 Ill. App. 3d 62, 75 (1st Dist. 2008). "Effecting an arrest is the execution or enforcement of a law." *Jones v. Village of Villa Park*, 784 F. Supp. 533, 535 (N.D. Ill. 1992) (citing *Glover v. City of Chicago*, 106 Ill. App. 3d 1066 (1st Dist. 1982). Rather than parsing through singular, discrete acts to determine whether an officer was executing or enforcing the law, the Court is to consider whether the officer was "engaged in a course of conduct designed to carry out or put into effect any law." *Fitzpatrick v. City of Chicago*, 112 Ill. 2d 211, 221 (1986).

Like the willful and wanton inquiry, the Illinois Supreme Court has held that the determination of whether an officer is executing or enforcing a law generally is a factual one that must be made in light of the circumstances in each case. *Fitzpatrick*, 112 Ill. 2d at 220 (citing *Arnolt v. City of Highland Park*, 52 Ill. 2d 27, 35 (1972); *Lacey*, 379 Ill. App. 3d at 75). Thus, "[t]he question of whether officers were executing or enforcing the law may be resolved by the Court as a matter of law where the facts [] support only one conclusion." *Lacey*, 378 Ill. App. 3d at 75. For example, a police officer responding to an emergency is considered to be executing and enforcing the law. *Id.* (citation omitted); see also *Bruecks v. County of Lake*, 276 Ill. App. 3d 567, 568-569 (2nd Dist. 1998). Likewise, an officer engaged in an investigation in order to enforce traffic laws is also considered to be executing and enforcing the law. *Wade v. City of Chicago*, 364 Ill. App. 3d 773, 780 (1st Dist. 2006). However, handling routine patrol duties — such as responding to a non-emergency call about a missing person (*Simpson v. City of Chicago*, 233 Ill. App. 3d 791, 793 (1st Dist. 1992)) or transporting an arrestee (*Aikens v. Morris*, 145 Ill. 2d 273 (1991)) — is not considered to be executing and enforcing the law.

Defendants argue that immunity attaches because there is no evidence that their conduct was willful and wanton. Cotton Mem. at 15; Sanchez Mem. at 16. As noted above, the parties present very different recollections of the August 8, 2005 conversation that led to Plaintiff's arrest. Again, viewing the facts in the light most favorable to Plaintiff, the Court must conclude that a reasonable jury could find that Defendant Cotton acted willfully and wantonly in arresting Plaintiff *if* the jury not only believed Plaintiff's version of the conversation, but also accepted Plaintiff's view of Defendant Cotton's motivation.

Moreover, even if there were no evidence from which a jury could find willful and wanton conduct in relation to the incident on August 8, 2005, summary judgment for Defendant Cotton on immunity grounds still would be inappropriate because Defendant Cotton has not met his burden of showing that he was "executing and enforcing the law" at the time that he was investigating Plaintiff's citizen complaint. Defendant Cotton offers no authority to support the assertion that, as a matter of law, an internal investigation of alleged police misconduct constitutes "executing and enforcing the law," rather than performing routine duties, for immunity purposes under the Act. Given that (i) the inquiry generally is a factual one that must be made in light of the circumstances in each case (*Fitzpatrick*, 112 Ill. 2d at 220), (ii) Defendant Cotton bears the burden of showing that immunity is appropriate, and (iii) Defendant has not cited any closely analogous authority in support of the proposition that the actions at issue here meet the "executing or enforcing the law" standard, the Court finds that summary judgment in favor of Defendant Cotton on the state law claims based on immunity is inappropriate, and his motion is therefore denied in that respect.

In sum, summary judgment in favor of Defendant Sanchez is appropriate as to the state-law claims of false arrest/imprisonment and malicious prosecution because the Court has found

that to the extent Defendant Sanchez was involved in Plaintiff's arrest, probable cause existed for his actions. However, the Court denies summary judgment for Defendant Cotton on the state law claims against him because genuine issues of material fact exist as to whether he had probable cause, and he has not met his burden of showing that his actions were not willful and wanton and that those actions were within the Local Government Immunity Act's shield on liability.

### E.    Battery

The final remaining count is Plaintiff's claim that Defendant Willett committed the tort of battery against her when he searched her despite the fact that she already had been arrested. Defendant Willett moves to dismiss Count VII pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff is barred from bringing this state-law claim against Defendant Willett by the statute of limitations for such a claim under the Illinois Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/8-101). Willett Mem. at 2. During the course of the parties' dispute over the appropriateness of Plaintiff's statement of additional facts, and upon request for clarification from the Court, Plaintiff indicated that she was withdrawing the battery claim against Defendant Willett. See [114]. Accordingly, Defendant Willett's motion to dismiss that count [49] is stricken as moot.

### F.    Punitive Damages

Defendants Cotton and Sanchez both challenge Plaintiff's contention that punitive damages are available to her because Defendants acted with "malice" or "reckless disregard." Because the Court found that summary judgment was appropriate in favor of Defendant Sanchez on all counts brought against him, the question as to whether any recovery of punitive damages is available against Defendant Sanchez is moot. Therefore the Court only considers whether

punitive damages may be available to Plaintiff against Defendant Cotton on the claims remaining against him, namely the Section 1983 retaliatory arrest claim and the two state law claims.

The Court first makes clear that as a matter of law, punitive damages potentially are available both for Plaintiff's federal claim and her state-law claims. See *Swick v. Liautaud*, 169 Ill. 2d 504, 522 (1996) (concurring opinion) ("In Illinois, with the exception of cases arising in response to medical malpractice litigation (735 ILCS 5/2-109), punitive damages have been available in malicious prosecution actions for at least 125 years. *Lawrence v. Hagerman*, 56 Ill. 68, 76 (1870) (noting, even then, that the rule was "well established")"); *Richardson v. County of Cook*, 250 Ill. App. 3d 544, 552 (1st Dist. 1993) (punitive damages are available for false arrests which are done "recklessly, oppressively, insultingly, or willfully, with a design to oppress and injure"); *Alexander v. City of Milwaukee*, 474 F.3d 437, 453 (7th Cir. 2007) ("In *Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 75 L.Ed.2d 632 (1983), the Supreme Court enunciated the appropriate standard for the availability of punitive damages under § 1983: '[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federal protected rights of others'.").

The common element for punitive damages here, both for the state-law claims or the Section 1983 claim, is whether Defendant Cotton acted with malice or reckless disregard to Plaintiff's rights. *Id.* Defendant Cotton contends that Plaintiff is "hardly in a position to show that Cotton acted recklessly or with malice toward her." Cotton Mem. at 17. Plaintiff responds that "given the clashing factual scenarios presented, a reasonable jury could easily believe that Cotton, through his dishonesty and his malicious violation of Plaintiff's First Amendment rights, in arresting her and having her charged with a crime, for which he did not have probable cause,

acted with callous indifference to her First Amendment rights." Pl. Br. at 33. Cotton in turn replies that Plaintiff did not appropriately identify any evidence that Cotton acted with malice or reckless indifference. Cotton Reply at 15.

The Court declines to hold that punitive damages are not available to Plaintiff at this time. Given that genuine issues of material fact exist as to Defendant Cotton's probable cause determination, the Court concludes that if the jury were to believe Plaintiff's story and found that the Plaintiff did not submit a false report, the jury reasonably might conclude that Defendant Cotton acted with malice or reckless disregard to Plaintiff's rights in arresting her and causing her to be held in the lock-up for a period of hours. Thus, summary judgment as to whether punitive damages are available is inappropriate as to Defendant Cotton.

## IV.   Conclusion

For the reasons set forth above, Defendant Willett's motion [64] for summary judgment on Count II and to dismiss Count VII is granted with respect to Count II and stricken as moot as to Count VII; Defendant Sanchez's motion for summary judgment [68] is granted; and Defendant Cotton's motion for summary judgment [79] is granted in part and denied in part. In addition, the joint motion to strike certain additional facts from Plaintiff's L.R. 56.1(b)(3)(c) [133] filed by Defendants Cotton and Sanchez is denied with respect to paragraphs 3-5 and 60 and denied as moot as to the remaining paragraphs. Finally, the joint motion to strike certain responses made by Plaintiff to their joint statement of facts [135] filed by Defendants Cotton and Sanchez is denied as moot.

Dated:  November 5, 2008                          _____
                                                                   Robert M. Dow, Jr.
                                                                   United States District Judge